AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

Certified to be a true and correct
copy of original filed in this District
Dated: __06/18/2020__
**MARY L. MORAN, Clerk of Court**
U.S. District Court of Oregon
By: s/jmontgomery

Pages ___1___   Through ___11___

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| SCOTT DYE | ) | Case No.  1:20-mj-00138-CL |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 17, 2020_____ in the county of _____Josephine_____ in the

District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C.  § 111(a)(1) | Assault on a Federal Officer |
| 43 C.F.R. § 8365.1-2 | Unlawful for any person, on all public lands, to camp longer than a period of time permitted by authorized officer |
| 43 C.F.R. § 8365.1-1(b)(1) | Unlawful for any person, on all public lands, to dispose of any cans, bottles and other nonflammable trash & garbage except in designated places or receptacles |

This criminal complaint is based on these facts:

See attached Affidavit of SA ███████████████

☑ Continued on the attached sheet.

███████████████████████████
*Complainant's signature*

████████████████ SA, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _____**330**_____ a.m./(p.m.)

Date:  __6/18/20__

_____
*Judge's signature*

City and state:        _____Medford, Oregon_____        MARK D. CLARKE, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:         AFFIDAVIT OF ███████████████

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, ████████████████, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July of 2008.  I am currently assigned to the FBI office in Medford, Oregon.  I completed five months training at the FBI Academy in Quantico, Virginia, where I learned the skills necessary to conduct federal criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits.  I have five years of experience working Domestic Terrorism Matters which included investigations into bombings, white powder letters, Sovereign Citizen Extremists, and Militia Extremists.  I have three years of experience as an Airport Liaison Agent where I handled all crimes aboard aircraft matters at the Portland International Airport.  I investigated and indicted several individuals for sexual assault, sexual assault on a minor, indecent exposure, and interference with flight crew members and other violations of federal law.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Scott Dye, date of birth XX/XX/1965.  As set forth below, there is probable cause to believe, and I do believe, that Scott Dye committed and attempted assault on a Federal employee, in violation of Title 18, United States Code, Section 111(a)(1) Assault on a Federal Employee, violated Title 43, Code of Federal Regulation, Section 8365.1-2 (camping longer than the period of time permitted by the authorized officer), and violated Title 43, Code of Federal Regulation, Section 8365.1-1(b)(1) (disposing of any cans, bottles and other nonflammable trash and garbage except in designated places or receptacles, unless otherwise authorized).

## Applicable Law

3.      Title 18, United States Code, Section 111(a)(1), provides that it is unlawful to forcibly assault any person designated in section 1114, when that person is engaged in the performance of his official duties.  Persons designated under Title 18, United States Code, Section 1114 include any officer or employee of the United States.

4.      Title 43, Code of Federal Regulation, Section 8365.1-2, provides that it is unlawful for any person, on all public lands, to camp longer than the period of time permitted by the authorized officer.

5.      Title 43, Code of Federal Regulation, Section 8365.1-1(b)(1), provides that it is unlawful for any person, on all public lands, to dispose of any cans, bottles and other nonflammable trash and garbage except in designated places or receptacles, unless otherwise authorized.

## Statement of Probable Cause

6.      On June 17, 2020, at approximately 7:40 a.m., a Bureau of Land Management (BLM) employee, hereafter referred to as Adult Victim 1 (AV1), was traveling west bound on BLM road 35-7-27.3, in Josephine County, approximately 5 miles west of the town of Merlin, Oregon.  AV1 was traveling in a government vehicle (a white 4-door Chevy Silverado with government issued plates G62 430 7U) on official BLM business.

7.      While driving, AV1 observed an overturned yellow bus located on the south side of BLM road 35-7-27.7, which is a road that parallels BLM road 35-7-27.3.  The bus was located on BLM property at GPS coordinates 42.5006210, -123.5133910 and was situated approximately

60 yards from AV1's vehicle.  AV1 exited his/her vehicle to take a photo of the bus.  AV1 had to cut a tree branch to clear a line of site down to the bus below.

8.      At approximately 7:50 a.m., while standing next to the driver side door, AV1 pulled out his/her phone to take a photo.  AV1 heard the rear driver side window on his/her government vehicle shatter.  AV1 took two photos and realized he/she was being shot at by someone in the vicinity of the bus.  AV1 opened the driver side door and got in the vehicle, and as AV1 closed the driver side door, a second round stuck the driver side window.  The round passed through the steering wheel next to AV1's hand, and struck or exited the roof of the vehicle.  Both bullets exited out the top of the truck, as if fired from an angle below the vehicle.





9.      AV1 drove the vehicle west bound on BLM road 35-7-27.3 to get away from the

unknown assailant.  Once at a safe distance, AV1 contacted 911 and requested law enforcement

and medical assets respond to the area.  Deputies with the Josephine County Sheriff's Office

(JCSO), BLM Special Agents, medical assets, and other law enforcement officers responded to

the scene.

10.     AV1 was evaluated by medical assets, and it was determined he suffered shrapnel

wounds to his/her hand from the bullet striking the steering wheel, and minor abrasions on

his/her ear from being cut by flying glass.

**Page 4 – Affidavit of** █████████                    **USAO Version Rev. April 2018**

11.     Deputies from Josephine County Sheriff's Office (JCSO), accompanied by other law enforcement officers, attempted to secure the area around the bus. No persons were seen in or around the immediate vicinity of the bus. While securing the scene, two .223 shell casing were located north of the bus but within the campsite surrounding the bus. The casings were behind a brown tarp that provided a line of site to the vicinity of where AV1's vehicle was located when it was struck by gunfire. The casings were collected by the JCSO deputies in an effort to preserve the evidence, and are now in the custody of BLM Special Agents.

12.     A short time later, a man purporting to be Scott Dye, date of birth XX/XX/1965, was observed walking east bound on BLM road 35-7-27.7, and was contacted by deputies. Dye was initially detained by law enforcement and read his Miranda rights. Upon contact, he asked if they were looking for him. He had no identification to confirm his identity. He stated he was out on his morning walk. He identified the bus camp site as "his" campsite. He was asked if he had weapons on his person, and he stated no, and when asked if he possessed any weapons, he requested an attorney and the interview was terminated.

13.     On June 17, 2020, interviews were conducted of other transient campers in the vicinity of the bus. Witness 1 (W1) lived in a camp near the bus. W1 stated the bus arrived approximately two weeks ago after the owner, whom he/she knows by the name of "Scott" was backing it up on the road and it fell down the hill. W1 has been to the bus a few times to help "Scott" with his camp. The only person W1 has seen at the bus has been "Scott."

14.     Witness 2 (W2) reported substantively the same information as W1. Additionally, W2 heard loud noises, which sounded like gunshots, the morning of June 17, 2020, coming from the vicinity of the bus. W2 has met "Scott" approximately eight times, and he is

the only person W2 has seen in the vicinity of the bus. The day prior (June 16, 2020), W2 heard someone fire approximately thirty shots from a small caliber rifle, and it sounded like the shots were coming from the vicinity of the bus.

15.     Witness 3 (W3) lived in a camp site near the bus. While on a walk the day prior (June 16, 2020), he/she reported to the interviewing officer that he/she was shot at by someone in the area around the bus.

## Prior BLM Contacts with Scott Dye

16.     On May 31, 2020, EMS was dispatched to the bus camp site after an individual backed the bus off of the side of the road, and the vehicle tumbled onto its side. EMS dispatch confirmed the EMTs contacted Scott Dye after he crashed the bus off of the side of the road.

17.     On June 1, 2020, Josephine County Contract Deputy ▇▇▇▇ observed the bus on the same road overturned, although he did not contact anyone or see anyone at the camp/bus on that date.

18.     On June 6, 2020, Deputy ▇▇▇▇ contacted an individual identified as Scott Dye at the bus location. Deputy ▇▇▇▇ observed Dye exit the rear of the bus, as he had been sleeping. Dye was notified by Deputy ▇▇▇▇ he had 14 days from the time his bus was on BLM property (May 31) to remove his belongings. On June 14, 2020, Deputy ▇▇▇▇ retuned and observed Dye was still in the same location.

19.     On June 17, 2020, SA ▇▇▇▇▇▇ (BLM) presented a Live Photo taken earlier in the day of Scott Dye (as he had presented himself to law enforcement), to Deputy ▇▇▇▇. Deputy ▇▇▇▇ positively identified Dye as the same individual he contacted at the bus on June 6, 2020.

**Execution of Search Warrant**

20.     On June 17, 2020, the FBI and Agents from BLM executed a federal search warrant on the bus and surrounding camp site.  Approximately five yards from the rear entrance of the bus, a .223 caliber shell casing was located on top of the soil.  Inside the rear entrance of the bus was the sleeping pad used by the occupant; an empty black rifle case and a fully loaded magazine of .223 rounds were located next to the sleeping pad.  No weapon was located.  From the rear of the bus and from the general location the shell casing was found, a direct line of site was visible to the location where AV1's government vehicle was struck by gunfire.  I observed the overturned bus location to be littered with personal belongings and areas of human waste disposal/toilet paper.  Josephine County dispatch provided DMV information that the bus was registered to Dye in Washington State.





**<u>Conclusion</u>**

21.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Scott Dye**,** date of birth XX/XX/1965, committed the offense of discharging a firearm at an

employee of the Bureau of Land Management in violation of Title 18, United States Code,

Section 111(a)(1) Assault on a Federal Employee, as well as violations of Title 43, Code of

Federal Regulation, Section 8365.1-2, (camping longer than the period of time permitted by an

authorized officer) and Title 43, Code of Federal Regulation, Section 8365.1-1(b)(1)( disposing

of any cans, bottles and other nonflammable trash and garbage except in designated places or

receptacles, unless otherwise authorized).  I therefore request that the Court issue a criminal complaint and arrest warrant for Scott Dye.

22.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Adam Delph, and AUSA Adam Delph advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**Page 9 – Affidavit of** ████████                    **USAO Version Rev. April 2018**
████████████

## Request for Sealing

23.    It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant.  I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation.  Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

████████████████████████████

Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___ 330 a.m/p.m. on June ___ 18 ___, 2020.

_____
HONORABLE MARK D. CLARKE
United States Magistrate Judge