BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**MARCO A. BOCCATO, OSB #103437**
Assistant United States Attorney
Marco.Boccato@usdoj.gov
310 West Sixth Street
Medford, OR  97501
Telephone:  (541) 776-3564
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:20-mj-00138-CL-1 |
| v. | **OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER AND PRETRIAL RELEASE ON CONDITIONS** |
| **SCOTT DYE,** | |
| **Defendant.** | |

Defendant poses a risk of non-appearance and a danger to the community and should not be released.  As alleged in the Complaint, defendant fired at least two shots at a Bureau of Land Management (hereinafter "BLM") employee while that employee was photographing defendant's overturned bus.  One shot struck the driver's side passenger window.  A second shot struck the driver's side door, before striking the steering wheel and fragmenting into shards that entered the victim's hand, causing injury.  Adult Victim 1 (hereinafter "AV1") was in fear for his life and could have easily died from defendant's actions.

## I.       Factual & Procedural Background.

On June 17, 2020, at approximately 7:40 a.m., AV1, a BLM employee, was traveling on a BLM road, in Josephine County, near the town of Merlin, Oregon.  AV1 was traveling on

official BLM business in a government vehicle (a white 4-door Chevy Silverado with government issued plates). While driving, AV1 observed an overturned yellow bus. The bus was located on BLM property, and was situated approximately 60 yards from AV1's vehicle. AV1 exited his/her vehicle to take a photo of the bus.

While standing next to the driver side door, AV1 pulled out his/her phone to take a photo. Shortly thereafter, AV1 heard the rear driver side window on his/her government vehicle shatter. A second round passed through the steering wheel next to AV1's hand. AV1 fled the area, and once at a safe distance, contacted 911.

AV1 was evaluated by medical personnel, and it was determined he/she suffered shrapnel wounds to his/her hand from the bullet striking the steering wheel, and minor abrasions on his/her ear from being cut by flying glass. Law enforcement attempted to secure the area around the bus. No persons were seen in or around the immediate vicinity of the bus. While securing the scene, two .223 shell casing were located north of the bus but within the campsite surrounding the bus.

A short time later, Scott Dye was observed walking nearby. Dye was initially detained by law enforcement and read his Miranda rights. Upon contact, he asked if they were looking for him. He stated he was out on his morning walk. He identified the bus camp site as "his" campsite. He was asked if he had weapons on his person, and he stated no, and when asked if he possessed any weapons, he requested an attorney and the interview was terminated.

Later the same day, interviews were conducted of other transient campers in the vicinity of the bus. Witness 1 (hereinafter "W1") lived in a camp near the bus. W1 stated the bus arrived approximately two weeks ago after the owner, whom he/she knows by the name of "Scott" was

backing it up on the road and it fell down the hill. W1 has been to the bus a few times to help "Scott" with his camp. The only person W1 has seen at the bus has been "Scott."

Witness 2 (hereinafter "W2") reported substantively the same information as W1. Additionally, on June 16, 2020, W2 heard loud noises, which sounded like gunshots, coming from the vicinity of the bus. W2 has met "Scott" approximately eight times, and he is the only person W2 has seen in the vicinity of the bus. Witness 3 (hereinafter "W3") lived in a camp site near the bus. While on a walk on June 16, 2020, W3 reported to law enforcement that he/she was shot at by someone in the area around the bus.

Prior contacts with EMS and law enforcement show that the bus had crashed at the location on or about May 31, 2020, and Dye was the sole occupant of the bus. Law enforcement also learned the bus was registered to Dye in Washington State.

On June 17, 2020, law enforcement executed a federal search warrant on the bus and surrounding camp site. Approximately five yards from the rear entrance of the bus, another .223 caliber shell casing was located. Inside the rear entrance of the bus was the sleeping pad used by the occupant. Next to the sleeping pad was an empty black rifle case and a fully loaded magazine of .223 rounds. No weapon was located.

Dye initially appeared on the complaint on June 19, 2020. Detention hearings were held on June 29, 2020, July 29, 2020, and August 3, 2020. The Court detained defendant after each hearing.

//

//

//

**Opposition to Defendant's Motion to Revoke Detention Order and Pretrial Release on Conditions** **Page 3**

## II.   Applicable Law

### A.   Rules of Evidence Do Not Apply at a Detention Hearing.

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

### B.   Standard for Pretrial Detention.

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of establishing the facts warranting detention. Danger to the community must be demonstrated by clear and convincing evidence; risk of flight may be established by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

There is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 111 (assault on a federal employee), which is a crime of violence in this context[1]. *See* 18 U.S.C. § 3156 (a)(4); *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009). As such, the government may seek pretrial detention based on both defendant's risk of non-appearance and danger to the community. 18 U.S.C. § 3142(f)(1)(A).

---

[1] Though the complaint cites 18 U.S.C. § 111(a)(1), the enhanced penalty under 18 U.S.C. 111(b) applies. Defendant used a deadly weapon (a firearm) and also inflicted bodily injury.

**Opposition to Defendant's Motion to Revoke Detention Order and Pretrial Release on Conditions**                                                                                                                 **Page 4**

Furthermore, even though the complaint does not explicitly allege a violation of 18 U.S.C. § 924(c), the facts set forth in the complaint do allege that defendant discharged a firearm in furtherance of a crime of violence.  As such, defendant may be subject to an enhanced penalty of 10 years in prison in addition to his sentence on the underlying crime of violence.  *United States v. Bates*, 960 F.3d 1278, 1285-87 (11th Cir. 2020) ("The use of a deadly weapon under § 111(b) transforms a § 111(a) act into a crime of violence.").  Furthermore, under the Bail Reform Act, a violation of 18 U.S.C. § 924(c) carries a presumption of detention. 18 U.S.C. § 3142 (e)(3)(B).

### C.     Factors to be Considered.

In determining whether "there are any conditions of release that will reasonably assure the appearance of the person as required," the court should consider four factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against defendant; (3) defendant's history and characteristics (including his character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense); and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  18 U.S.C. § 3142(g); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted).

## III.    Factors Supporting Detention.

The factors in 18 U.S.C. § 3142(g) support defendant's continued detention.  There is no release conditions that can reasonably assure community safety, and no combination of conditions can reasonably assure defendant's appearance.

### A. The Nature & Circumstances of this Offense, 3142(g)(1).

Defendant is charged with a violent crime, and if additional charges are added in a later charging instrument, his sentencing exposure is significant. Defendant fired multiple shots at a BLM employee who was simply photographing defendant's campsite from a distance. It is not an exaggeration to say that AV1 is lucky to be alive. Moreover, at least one other witness reports being shot at from defendant's campsite the day prior.

### B. The Weight of the Evidence, 3142(g)(2).

The weight of the evidence supports detention. Defendant's prior contacts with BLM and other witnesses clearly indicate that defendant was the sole occupant of the campsite. AV1 was openly looking at/towards defendant's bus and campsite when defendant opened fire on AV1. The shooter fired multiple rife rounds at AV1, and bullet casings consistent with rifle rounds were found at defendant's campsite the day of the shooting. There is a direct line of site between the bullet casings and AV1's government vehicle. Although no firearm was found in the campsite, law enforcement did locate an empty rifle case.

### C. Defendant's History & Characteristics, 3142(g)(3).

While defendant's criminal history does not reflect offenses as violent as the present case, it has been consistent since at least 2014. Within the last five years, defendant has been convicted twice of resisting arrest, and once of disorderly conduct. Defendant left his job five years ago and appears to have been living off of his savings. There is no way to determine what resources defendant possesses to flee or commit similar crimes of violence against AV1 or other individuals.

//

**D. Nature & Seriousness of the Danger Posed by Defendant's Release, 3142(g)(4).**

Defendant's deliberately violent actions nearly caused AV1's death. A further witness also stated that they were shot at from defendant's campsite just prior to this incident. While defendant's motives may not be entirely clear, his actions are strongly disturbing and reflect defendant's danger to the public. AV1 has made it clear to the government and the Court that he/she opposes defendant's release. When defendant shot at him/her, AV1 thought he/she was going to die. It took AV1 about 10 minutes to stop shaking to call 911. All the while, he/she was worried defendant would be coming up the road after him/her. The event continues to haunt AV1.

Despite the willingness of defendant's family to house him in North Carolina, there is no guarantee defendant will remain there. Defendant has not lived with his family for some time, and any alleged ties to family that would keep him in one place are not supported by defendant's history over the past five years. AV1 has every right to be concerned that defendant will not remain with his family and could pose a danger to AV1 or others.

**IV. Conclusion.**

For the reasons set forth above, there are no set of conditions which would ensure the defendant's appearance at trial or the safety of any other person and the community. Defendant should remain detained.

Dated this 13th day of August, 2020.    Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
*s/Marco A. Boccato*
MARCO A. BOCCATO
Assistant United States Attorney